**Exhibit**

**A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **VERITAS INDEPENDENT PARTNERS, LLC,** | : | |
| Plaintiff, | : | **Case No. 1:18-cv-769** |
| **v.** | : | **Judge Barrett** |
| **THE OHIO NATIONAL LIFE INSURANCE COMPANY, et al.,** | : | |
| Defendants. | : | |

## DECLARATION OF THOMAS DEGAETANO

I, Thomas DeGaetano, declare under penalty of perjury, based on personal knowledge (unless otherwise noted), as follows:

1.     I am Vice President Annuity Product Management with The Ohio National Life Insurance Company ("ONLIC").

2.     In that position, I am familiar with the practices employed by ONLIC (and other Ohio National entities) in contracting with third-party broker-dealers for the sale of variable annuity products offered and issued by ONLIC and Ohio National Life Assurance Corp. ("ONLAC").  ONLIC and ONLAC are insurance companies that offer for sale various insurance-related products, including life insurance.

3.     Previously, ONLIC sold individual variable annuities.  Variable annuities are annuities that include assets maintained in securities sub-accounts.

4.     In order to make their products available to a wide customer base, ONLIC and ONLAC, along with Ohio National Equities, Inc. ("ONEQ"), have historically entered into "selling agreements" with third-party broker-dealers unaffiliated with Ohio National—including Veritas.  Such agreements authorized the contracting broker-dealers to offer and sell various

products created by ONLIC and ONLAC, including individual variable annuities. In my position with ONLIC, I have access to the selling agreements executed and maintained by Defendants in the ordinary course of business, as well as correspondence relating to the same.

5.     Attached as Exhibit 1 to this Declaration is a true and accurate copy of the August 25, 2014 Selling Agreement between ONLIC, ONLAC, ONEQ, and Veritas, including addenda and commission schedules attached thereto and incorporated therein (the "Selling Agreement"). Such agreement is a record maintained in the ordinary course of these entities' business.

6.     ONEQ—a broker-dealer registered with the Financial Industry Regulatory Authority—was made a party to the Selling Agreement for regulatory reasons.  That is because the Selling Agreement authorized the sale of variable products, which are regulated as securities. However, the individual variable annuities at issue in this case were sold by ONLIC.  The premiums paid for purchase of such annuities went to ONLIC. And, commissions owed to broker-dealers, including Veritas, based on such annuities, pursuant to the terms of the Selling Agreements, were paid by ONLIC.

7.     Attached as Exhibits 2 and 3 to this Declaration are true and accurate copies of letters, dated September 21, 2018, sent by ONLIC, ONLAC, and ONEQ relating to termination of the Selling Agreement.  These letters were prepared, sent, and maintained in such entities' ordinary course of business.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this 22nd day of January, 2019.

_____
THOMAS DEGAETANO

796052

2

ONFS FAX Copy Page 2 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server 041    Fax Server

confidential

*Group 9 DI ADDENDUMS*                    *I BD*

# SELLING AGREEMENT

Agreement, made this **25** date of **August**, 20__ by and between The Ohio National Life Insurance Company, an Ohio Corporation; Ohio National Life Assurance Corporation, an Ohio corporation; Ohio National Equities, Inc. ("ONEQ"), an Ohio Corporation, and **Veritas Ind. Partners**"), a **LLC** Corporation.

Whereas, The Ohio National Life Insurance Company and its subsidiary, Ohio National Life Assurance Corporation (collectively referred to as "ONL"), issue certain variable insurance contracts/policies ("Contracts") described in this Agreement, which are deemed securities under the Securities Act of 1933 ("1933 Act"); and

Whereas, ONEQ is duly licensed as a Broker/Dealer with the National Association of Securities Dealers, Inc. ("FINRA") and the Securities and Exchange Commission ("SEC"); and

Whereas, ONL has appointed ONEQ as the Principal Underwriter of the Contracts; and

Whereas, ONL and ONEQ propose to have BD's registered representatives ("Representatives") who are, or will become, duly licensed insurance agents, solicit sales of the Contracts; and

Whereas, ONEQ delegates to BD, to the extent legally permitted, training and certain administrative responsibilities and duties in connection with sales of the Contracts;

NOW THEREFORE, in consideration of the premises and mutual promises contained herein, the parties hereto agree as follows:

## 1. APPOINTMENT

ONL and ONEQ hereby appoint BD to supervise solicitations of the Contracts, and to facilitate solicitations of sales of the Contracts which are described in the Schedule(s) of Commissions attached hereto.

## 2. REPRESENTATIONS

a. ONL, ONEQ and BD each represents to the others that it and the below signed officers have full power and authority to enter into this Agreement.

b. ONEQ represents to BD that it is registered as a Broker/Dealer under the Securities Exchange Act of 1934 ("1934 Act") and under the securities laws of each jurisdiction in which such registration is required for the sale of the Contracts and that ONEQ is a member of the FINRA.

c. BD represents to ONEQ that it is registered as a Broker/Dealer under the 1934 Act and under the securities laws of each jurisdiction in which such registration is

required for the sale of the Contracts, and that the BD is a member of the FINRA.

d. ONL represents to BD that the Contracts, including related separate accounts, shall comply with the registration and all other applicable requirements of the 1933 Act and the Investment Company Act of 1940 ("1940 Act"), and the rules and regulations thereunder, including the terms of any order of the SEC with respect thereto.

e. ONL represents to BD that the Contracts it issues have been duly filed and approved by the state insurance departments in such jurisdictions where it is authorized to transact business, unless otherwise indicated in the Schedule of Commissions.

f. ONL represents to BD that the Registration Statement and any post-effective amendments and any supplements thereto, as filed or to be filed with the SEC, as of their respective dates, contain or will contain, all statements and information which are required to be stated therein by the 1933 Act and the 1940 Act and in all respects conform or will conform, to the requirements thereof.

## 3. COMPLIANCE WITH FINRA CONDUCT RULES AND FEDERAL AND STATE SECURITIES AND STATE INSURANCE LAWS

BD agrees to abide by all rules and regulations of the FINRA, including its Conduct Rules, and to comply with all applicable state and federal laws and the rules and regulations of authorized regulatory agencies affecting the sale of the Contracts.

## 4. LICENSING AND/OR APPOINTMENT OF REPRESENTATIVES

BD certifies that any Representative who requests appointment from ONL has not been convicted of a felony or a misdemeanor involving fraud or dishonesty. BD shall assist ONL and ONEQ in the licensing and/or appointment of Representatives under applicable insurance laws to sell the Contracts (see attached General Letter of recommendation). BD understands that ONL reserves the right to refuse to appoint any Representative or, once appointed, to thereafter terminate the same. BD shall notify ONEQ if any Representative ceases to be a registered representative of BD,

Exhibit

A-1

confidential

ONFS FAX Copy Page 3 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server 041    Fax Server

confidential

or if any Representative becomes the subject of adverse action (e.g., an amended U-4).

## 5. SUPERVISION OF REPRESENTATIVES

BD shall have full responsibility for training and supervision of all Representatives who are engaged directly or indirectly in the offer or sale of the Contracts and all such persons shall be subject to the control of BD with respect to such persons' activities in connection with the sale of the Contracts. BD shall comply with the administrative procedures of ONL and ONEQ involving state and federal securities law and state insurance law.

Before Representatives engage in the solicitation of applications for the Contracts, BD will cause: (1) the Representatives to be registered representatives of BD; (2) the Representatives to qualify under applicable federal and state laws to engage in the sale of the Contracts; (3) the Representatives to be trained in the sale of the Contracts; and (4) the Representatives to limit solicitations for the Contracts to jurisdictions where ONL has authorized such solicitation.

BD is specifically charged with the responsibility of supervising and reviewing its Representatives' use of sales literature and advertising and all other communications with the public in connection with the Contracts. No sales solicitation, including the delivery of supplemental sales literature or other such materials, shall occur, be delivered to, or used with a prospective purchaser unless accompanied or preceded by appropriate then current prospectus(es).

In the event a Representative fails to meet the BD's rules and standards with respect to the solicitation of Contracts, BD shall act to terminate the sales activities of such Representative relating to the Contracts.

## 6. SALES PROMOTION MATERIAL AND ADVERTISING

No sales promotion materials or advertising relating to the Contracts shall be used by BD unless the specific items have been approved in writing by ONL.

## 7. SECURING APPLICATIONS

All applications for Contracts shall be made on application forms supplied by ONL. BD will review all sales for suitability and all applications for completeness and correctness as to form. BD will promptly, but in no case later than the end of the next business day following receipt by BD, forward to ONL all complete and correct applications for suitable transactions, together with any payments received with the applications. ONL reserves the right to reject any Contract application and return any payment made in connection with

an application which is rejected. Contracts issued on accepted applications will be forwarded to BD or its Representatives for delivery to the Contract Owner within five (5) days after the date of issue, unless otherwise agreed by the parties hereto.

## 8. PAYMENTS RECEIVED BY BD

All premium or annuity purchase payments (hereinafter collectively referred to as "Payments") are the property of ONL and shall be transmitted to ONL by BD immediately in accordance with the administrative procedures of ONL without any deduction or offset for any reason, unless otherwise agreed by the parties hereto. CUSTOMER PREMIUM CHECKS SHALL BE MADE PAYABLE TO THE ORDER OF "OHIO NATIONAL LIFE".

## 9. COMMISSIONS PAYABLE

Commissions payable in connection with the Contracts shall be paid to BD, or its affiliated insurance agency, according to the Commission Schedule(s) relating to this Agreement as they may be amended from time to time and in effect at the time the Contract Payments are received by ONL. ONL reserves the right to revise the Commission Schedules at any time upon at least thirty (30) days prior written notice to BD. ONL also reserves the right to adjust the compensation payable on sales of ONL products that replace existing ONL contracts and offset future compensation payable to BD against any compensation to be returned to ONL by BD. Compensation to the BD's Representatives for Contracts solicited by the Representatives and issued by ONL will be governed by an agreement between BD and its Representatives and its payment will be the BD's responsibility. In those states where express assignment of commissions is required, BD hereby assigns its Representatives' commissions to its affiliated insurance agency for those states.

BD will not pay any compensation to a Representative licensed pursuant to this Agreement until such Representative is authorized to receive such compensation under applicable state law.

The terms of compensation shall survive this Agreement unless the Agreement is terminated for cause by ONL, provided that BD remains a broker-dealer in good standing with the FINRA and other state and federal regulatory agencies and that BD remains the broker-dealer of record for the account.

## 10. CANCELLATION OF POLICY

If ONL refunds premiums or returns Contract value and waives surrender charges on any Contract for any reason, then no commission will be payable with respect to said premiums and any commission previously paid for said premiums shall

2

confidential

ONFS FAX Copy Page 4 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server 041    Fax Server

confidential

be refunded to ONEQ. However, ONL will not refund premiums or return Contract value and waive surrender charges to satisfy customer complaints without prior notification to BD.

ONEQ agrees to notify BD within thirty (30) days after it receives notice from ONL of any premium refund or a commission chargeback.

## 11. ADDITIONAL PARTY TO THIS AGREEMENT

In the event that BD is not licensed as an insurance agency in any state where it wishes to solicit contracts, but utilizes an affiliated entity to satisfy state insurance laws, such affiliated entity shall sign this Agreement and BD shall countersign this Agreement, and BD and its affiliated entity shall be duly bound thereby. All references to BD in this Agreement shall include any affiliated entity.

## 12. HOLD HARMLESS AND INDEMNIFICATION PROVISIONS

No party to this Agreement will be liable for any obligation, act or omission of the other. Each party to this Agreement will hold harmless and indemnify ONL, ONEQ, and BD as appropriate, for any loss or expense suffered as a result of the actual or alleged violation of, or noncompliance with, any applicable law or regulation or for a breach of this Agreement by a party or by an Associated Person of that party. The term "Associated Person" as used herein shall be defined consistently with the definition of such term as contained in Article I of the FINRA By-laws.

## 13. NON-ASSIGNABILITY PROVISION

This Agreement may not be assigned by any party except by mutual consent.

## 14. NON-WAIVER PROVISION

Failure of any party to terminate the Agreement for any of the causes set forth in this Agreement will not constitute a waiver of the right to terminate this Agreement at a later time for any of these causes.

## 15. AMENDMENTS

ONL and ONEQ each reserves the right to unilaterally amend this Selling Agreement in order to comply with any law, rule or regulation, provided, however, any such change or amendment shall become effective after thirty (30) days prior written notice is delivered to the address provided in the Selling Agreement.

Any other changes or amendments to the Selling Agreement shall not be effective unless thirty (30) days prior written notice is provided and unless agreed to by the parties in writing, if the change is proposed by the BD, or as evidenced by submission of additional applications if proposed by ONL or ONEQ.

## 16. INDEPENDENT CONTRACTORS

BD and its Representatives are independent contractors with respect to ONL and ONEQ.

## 17. NOTIFICATION OF DISCIPLINARY PROCEEDINGS

BD agrees to notify ONEQ in a timely fashion of any disciplinary proceedings against any of BD's Representatives arising from the solicitation of sales of the Contracts or any threatened or filed arbitration action or civil litigation arising out of BD's solicitation of the Contracts.

## 18. BOOKS AND RECORDS

ONL, ONEQ and BD agree to maintain their books, accounts and records so as to clearly and accurately disclose the nature and details of transactions and to assist each other in the timely preparation of records. ONEQ and BD shall each submit such records to the regulatory and administrative bodies which have jurisdiction over ONL or the underlying mutual fund shares.

Each party to this Agreement shall promptly furnish to the other party any reports and information which the other party may reasonably request for the purpose of meeting its reporting and recordkeeping requirements under the insurance laws of any state, under federal and state securities laws or under the rules of the FINRA.

## 19. LIMITATIONS

No party other than ONL shall have the authority on behalf of ONL to make, alter, or discharge any Contract issued by ONL, to waive any forfeiture or to grant, permit, or extend the time of making any Payments, or to alter the forms which ONL may prescribe, or to substitute other forms in place of those prescribed by ONL; or to enter into any proceeding in a court of law or before a regulatory agency in the name of or on behalf of ONL.

## 20. TERMINATION

This Agreement may be terminated at the option of any party upon sixty (60) days written notice to the other parties, or

3

03

confidential

without notice at the option of any party hereto upon a material breach by any party of the covenants and terms of this Agreement.

### 21. NOTICE

All notices to ONL and ONEQ relating to this Agreement should be sent to One Financial Way, Cincinnati, Ohio 45242, ATTN: Legal Department. All notices to BD shall be duly given if mailed to the address shown below, or if otherwise delivered to ONL in a manner mutually agreed upon before the attempted delivery.

### 22. GOVERNING LAW/ SEVERABILITY

This agreement will be construed in accordance with the laws of the State of Ohio. Should any provision of this Agreement be held unenforceable, those provisions not affected by the determination of unenforceability shall remain in full force and effect.

### 23. GENERAL CONDUCT OF BD

BD expressly agrees that neither it nor its Representatives will induce agents to leave ONL; engage in any course of conduct to systematically replace Contracts issued by ONL; or recommend or cause the surrenders of cash values of the Contracts to purchase or exchange for insurance policies or annuities issued by other insurance companies, unless such action is in the best interests of the customer; or otherwise do anything prejudicial to ONL's interest or that of its customers. This provision will continue in force after the termination of this Agreement.

### 24. CUSTOMER COMPLAINTS

In the event a complaint is received by ONL or ONEQ from a customer, ONL or ONEQ will advise BD as soon as possible of the existence and nature of the complaint. BD shall have a reasonable amount of time, not to exceed ten (10) days unless otherwise agreed to by the Parties, to resolve the complaint.

In the event the complaint is not resolved, ONL may, in its sole discretion, refund premiums or return contract values and waive surrender charges or otherwise act to resolve the customer's complaint.

In the event a complaint is made by a customer or to a state or federal regulatory agency or filed with an appropriate self-regulatory organization, BD shall fully cooperate with ONL in responding to the complaint, including providing all documents and records reasonably requested by ONL.

### 25. REQUIRED ELEMENTS OF THIS AGREEMENT

This agreement is not complete unless it includes a Commission Schedule, and the General Letter of Recommendation, both of which are incorporated herein by reference.

### 26. ANTI-MONEY LAUNDERING PROCEDURES

BD represents that it has adopted, implemented and will maintain an anti-money laundering compliance program as required by law. BD further warrants that before submitting applications and funds to ONL and ONEQ, BD will ensure that customers have been properly identified and the details of the transaction verified in accordance with the latest anti-money laundering requirements and guidelines. BD agrees to provide periodic evidence and details of its anti-money laundering procedures as requested by ONL and ONEQ.

### 27. PRIVACY

BD represents that it has adopted and implemented procedures to safeguard consumer information and records that are reasonably designed to (i) insure the security and confidentiality of BD's customer records and information; (ii) protect against any anticipated threats or hazards to the security or integrity of customer records and information; (iii) protect against unauthorized access to or use of BD's customer records or information that could result in substantial harm or inconvenience to any customer; (iv) protect against unauthorized disclosure of non-public personal information to unaffiliated third parties; and (v) otherwise ensure BD's compliance with Regulation S-P.

BD agrees to indemnify ONL against any and all claims, liability, expense or loss in any way arising out of BD's failure to adopt and implement these and such other privacy or confidentiality procedures that may be in the future required by law or regulation.

confidential

confidential

THE OHIO NATIONAL LIFE INSURANCE COMPANY
OHIO NATIONAL LIFE ASSURANCE CORPORATION .

BY: *Thomas Q. Barfield*

Title: Vice Chairman & Chief Distribution Officer

OHIO NATIONAL EQUITIES, INC.

BY: *Thomas Q. Barfield*

Title: Vice Chairman & Chief Distribution Officer

BROKER DEALER .

*16929 1*    [REDACTED]
Firm CRD #    Tax ID Number

*Veritas Independent Partners*
(Name)

*1150 Bob Courtway Dr, Suite 50*
(Street Address)

*Conway, Ar 72032*
(City, State/Zip)

BY: *Debra Shannon*

Title: *C.C.O.*

BROKER-DEALER INSURANCE AFFILIATE

BY: *Debra Shannon*

Title: *Owner*

Form 8507A

5

confidential

confidential

# GENERAL LETTER OF RECOMMENDATION

The undersigned broker-dealer, on behalf of itself and its insurance affiliate(s), if any, certifies the following in conjunction with the submission of licensing/appointment papers for any applicant as agent of The Ohio National Life Insurance Company or Ohio National Life Assurance Corporation ("ONL"), and broker-dealer will, upon request, forward proof of compliance with same to ONL in a timely manner.

1.     We have made a thorough and diligent inquiry and investigation into the character and background of this applicant, as well as identity, residence, personal history, and experience and instruction, and are satisfied that the applicant is of good moral character, financially responsible, trustworthy and qualified to act as your agent.

2.     We have on file a current U-4 form which was completed by the applicant, and we have fulfilled all the necessary investigative requirements for the registration of the applicant as a registered representative of our FINRA member firm. The applicant is presently registered as an FINRA registered representative.

3.     We certify that the applicant meets all state-specific requirements for the states in which the applicant wishes to be appointed, including all educational requirements, and that we have obtained all necessary information about the applicant (including, where applicable, current credit reports).

4.     We hereby warrant that the applicant is not applying for a license with ONL in order to place insurance chiefly and solely on his life, or lives of his relatives or associates.

5.     In states where insurance agents may not solicit business for an insurance company until they are appointed with that company, we will not permit any applicant to transact insurance as an agent of ONL until duly licensed or appointed by ONL. No applicant in any of those restricted states has been permitted to write, solicit business, or act as an agent in any capacity, and they will not be so permitted until the certificate of authority or license applied for is received.

BROKER-DEALER

By: _____

Its: _____

8507B

confidential

confidential

## ADDENDUM TO SELLING AGREEMENT

RE: No Commission Annuity Product

The Ohio National Life Insurance Company ("ONLIC") and Ohio National Equities, Inc. ("ONEQ") are pleased to provide registered representatives, and their immediate family members, the opportunity to purchase an ONcore Value contract or ONcore Xtra contract as owner which provides for an earnings credit of 5% (in addition to any other credit provided for under the contract) to be added to the contract upon payment of any purchase payments to the contract. Notwithstanding Section 9 of the existing Selling Agreement, no commissions will be paid to the broker dealer on these annuity contracts purchased by registered representatives and members of their immediate family. Immediate family members include the registered representative's spouse and children.

For each such purchase, ONLIC must receive written notice (which may include electronic mail and facsimile) authorized by the branch manager or OSJ supervisor indicating the names of the owner, annuitant and registered representative, and the relationship of the parties. ONLIC will treat the credits as earnings on the annuity contract and will generally tax report upon withdrawal from the annuity contract. ONLIC makes no warranties or representation as to the tax treatment of the credit. If the contract is cancelled under the Right to Cancel provision of the contract, ONLIC will recoup the credit plus any interest paid on the credit amount if the credit was deposited in the enhanced dollar cost averaging account. Applicable withdrawal charges will apply to the credit if it is withdrawn from the contract before the expiration of the surrender charge period.

The sale of such contract is not a direct sale and is subject to the terms of our current Selling Agreement, except as such agreement is modified. Please sign below to provide your authorization to effectuate the amendment to the terms of our current Selling Agreement.

THE OHIO NATIONAL LIFE INSURANCE COMPANY

BY: _Thomas Q. Barsfield_

NAME: _THOMAS BAREFIELD_

TITLE: _Vice Chairman + Chief Distribution Officer_

OHIO NATIONAL EQUITIES, INC.

BY: _Thomas Q. Barsfield_

NAME: _Thomas BAREFIELD_

TITLE: _Vice Chairman + Chief Distribution Officer_

Acknowledged and agreed to:

BROKER DEALER

BY: _Debra Shannon_

NAME: _Debra Shannon_

TITLE: _CCO_

confidential

ONFS FAX Copy Page 9 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server 041    Fax Server

confidential

# FIXED AND VARIABLE INSURANCE ADDENDUM

WHEREAS, the parties hereto have entered into a Selling Agreement in order to enable BD and its Representatives to sell ONL variable products, namely ONcore variable annuities; and

WHEREAS, the parties wish to authorize BD and its Representatives to sell ONL life insurance products, which include variable life insurance ("variable contracts") and insurance and annuity contracts which are not variable contracts and not subject to regulation as securities under federal or state law ("fixed contracts"); and

WHEREAS, ONL desires to market the fixed contracts through BD's affiliated insurance agency ("Agency") and BD's Representatives;

NOW, THEREFORE, the parties hereto agree to supplement the Agreement, with regard to sales of variable life insurance policies, as follows:

1. Incorporation by Reference. The terms and provisions of the Selling Agreement are incorporated herein and made applicable to the solicitation, delivery and servicing of variable contracts and fixed contracts, except as follows:

(a) Ohio National Equities, Inc. ("ONEQ"), the principal underwriter of ONL's variable products, is only a party to this addendum with respect to variable life contracts. ONL, including both The Ohio National Life Insurance Company and Ohio National Life Assurance Corporation, is the issuer of the fixed contracts.

(b) References in the Selling Agreement to Contracts shall, for purposes of this addendum, also be references to fixed annuities and fixed life insurance policies issued by ONL.

(c) The compensation supplement attached to, and incorporated into, this addendum, shall apply to the sales of variable contracts and fixed contracts issued by ONL. The compensation payable to the Agency under said compensation supplement is subject to such future changes as are made applicable to the variable and fixed contracts described therein.

2. Underwriting. BD shall cause its Representatives to comply with all procedures established by ONEQ or ONL for soliciting, completing and transmitting applications and orders and shall comply with ONL's rules and practices in regards to insurance underwriting and acceptance of risks.

3. Purchase Payments. A payment made to BD, or BD's receipt of a check or other negotiable instrument payable to ONL, shall not constitute payment to, or receipt by, ONL, except for BD's receipt of the initial payment necessary to place in force or to reinstate a policy or to effect its delivery. BD shall not make any representations to policy owners or premium payors contrary to the foregoing.

4. Limits on Authority. BD and its Representatives have no authority to accept any past due payment on behalf of ONEQ or ONL; to approve evidence of insurability for ONL; or to bind ONEQ or ONL by making or receiving any promises, representations or notices contrary to or inconsistent with the terms and provisions of the variable or fixed contracts, the prospectuses therefor (if any) or any sales literature developed or approved by ONL or ONEQ.

5. Delivery of Policies. No variable or fixed insurance policy shall be delivered unless and until the minimum premium payment required to place the policy in effect has been paid by the purchaser, nor unless BD, through its Representatives, is reasonably satisfied, based upon its own knowledge and upon reasonable inquiry to the proposed insured, that the proposed insured is, at the time of policy delivery, in the same health and insurable condition as represented in the application for the policy.

confidential

confidential

6.    Confirmations.  Contemporaneous confirmations are not provided on variable universal life policies for purchase payments made by automatic bank drafts, payroll deduction or other automated and regularly scheduled methods of payment pre-authorized by the purchaser.  Confirmation of such payments appears on the annual statement for the policy provided to the policy owner on the occasion of each policy anniversary.

7.    Application of ONL Rules and Practices.  The then-current rules and practices of ONEQ and ONL shall govern the payment and adjustment of compensation under the following circumstances:

    (a) if issuance of the policy is based on any modification of the insurer's rules;
    (b) if the policy issued causes the total insurance for the insured to exceed the insurer's retention limit;
    (c) if any premium or cost of insurance is waived on account of disability;
    (d) if any temporary, extra premium or any extra premium on account of travel, residence or aviation is paid; or
    (e) if no other applicable provision of this Agreement controls.

**THE OHIO NATIONAL LIFE INSURANCE COMPANY**
**OHIO NATIONAL LIFE ASSURANCE CORPORATION**

By: _Thomas Q. Barfield_

    Title: _Vice Chairman + Chief Distribution Officer_

    Date: _8/25/14_

**OHIO NATIONAL EQUITIES, INC.**

By: _Thomas Q. Barfield_

    Title: _Vice Chairman + Chief Distribution Officer_

    Date: _8/25/14_

**BROKER DEALER (identified in Agreement)**
(on behalf of itself and Agency)

Firm: _Veritas Independent Partners_

By: _John Shannon_

    Title: _C.E.O_

    Date: _8-21-14_

confidential

confidential

## ADDENDUM TO SELLING AGREEMENT

The Selling Agreement by and between The Ohio National Life Insurance Company and Ohio National Life Assurance Corporation (collectively referred to as "ONL"), Ohio National Equities, Inc. ("ONEQ"), and your firm ("BD"), is amended as follows.

1.    All references to the National Association of Securities Dealers ("NASD") contained within the Selling Agreement are hereby deleted and replaced with the Financial Industry Regulatory Authority ("FINRA").

2.    Section 7 of the Selling Agreement is hereby amended by inserting the following at the end of the section:

> "BD may use electronic order tickets with the consent of ONL; provided that the order is not for a sale which is a replacement. If BD submits electronic order tickets for Contracts, BD represents and warrants that the electronic order ticket for the purchase of a Contract operates as an electronic signature from the registered representative representing that no replacement is involved in the sale."

3.    Section 18 of the Selling Agreement is hereby amended by inserting the following at the end of the section:

> "BD agrees to provide periodic evidence and to certify that it is in compliance with all applicable state insurance laws, federal and state securities laws and rules of FINRA as requested by ONL and ONEQ."

confidential

10

ONFS FAX Copy Page 12 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server) 41    Fax Server

confidential

## ADDENDUM TO SELLING AGREEMENT

RE: No Commission Annuity Product

The Ohio National Life Insurance Company ("ONLIC") and Ohio National Equities, Inc. ("ONEQ") are pleased to provide registered representatives, and their immediate family members, the opportunity to purchase an ONcore Premier contract as owner which provides for an earnings credit of 5% (in addition to any other credit provided for under the contract) to be added to the contract upon payment of any purchase payments to the contract. Notwithstanding Section 9 of the existing Selling Agreement, no commissions will be paid to the broker dealer on these annuity contracts purchased by registered representatives and members of their immediate family. Immediate family members include the registered representative's spouse and children.

For each such purchase, ONLIC must receive written notice (which may include electronic mail and facsimile) authorized by the branch manager or OSJ supervisor indicating the names of the owner, annuitant and registered representative, and the relationship of the parties. ONLIC will treat the credits as earnings on the annuity contract and will generally tax report upon withdrawal from the annuity contract. ONLIC makes no warranties or representation as to the tax treatment of the credit. If the contract is cancelled under the Right to Cancel provision of the contract, ONLIC will recoup the credit plus any interest paid on the credit amount if the credit was deposited in the enhanced dollar cost averaging account. Applicable withdrawal charges will apply to the credit if it is withdrawn from the contract before the expiration of the surrender charge period.

The sale of such contract is not a direct sale and is subject to the terms of our current Selling Agreement, except as such agreement is modified. Please sign below to provide your authorization to effectuate the amendment to the terms of our current Selling Agreement.

THE OHIO NATIONAL LIFE INSURANCE COMPANY

BY: *Thomas Q. Barfield*

NAME: *THOMAS BAREFIELD*

TITLE: *Vice Chairman + Chief Distribution Officer*

OHIO NATIONAL EQUITIES, INC.

BY: *Thomas Q. Barfield*

NAME: *Thomas Barefield*

TITLE: *Vice Chairman + Chief Distribution Officer*

Acknowledged and agreed to:

BROKER DEALER: *Veritas Independent Partners*

BY: *Debra Shannon*

NAME: *Debra Shannon*

TITLE: *C.C.O*

confidential

ONFS FAX Copy Page 13 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server) 41    Fax Server

confidential

# Life Insurance Commission Schedule
# Ohio National Financial Services

**First –Year Commission** (as a percentage of first year premiums paid on policies produced by Dealer's Representatives) [1]

| Product | Rate |
|---|---|
| **Term Insurance** | |
| 10, 15 and 20-year Term | 90 |
| **Variable Universal Life** | |
| Virtus VUL | 80 |
| **Universal Life** | |
| V-Pro UL | 100 |

| Product | Rate |
|---|---|
| **Whole Life** | |
| Prestige Value III  $5,000–$99,999 | 105 |
| Prestige Value III  $100,000 + | 100 |
| Prestige Performance | 90 |
| Prestige Xcel | 90 |
| Prestige Max: Ages 0-50 $25,000 - $99,000 | 85 |
| Prestige Max: Ages 51-54 $25,000 - $99,000 | 80 |
| Prestige Max: Ages 55-70 $25,000 - $99,000 | 70 |
| Prestige Max: Ages 0-50  $100,000 + | 80 |
| Prestige Max:  Ages 51-54  $100,000 + | 70 |
| Prestige Max:  Ages 55-70  $100,000 + | 60 |

[1] Commission rates shown payable to Maximum Commissionable Premium (MCP). Amounts in excess of MCP is paid at Renewal Commission rates (shown below).

**Renewal Commissions** (as a percentage of premiums paid in the second and later policy years)

| POLICY PLANS | POLICY YEARS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11+ |
| Prestige Value, Prestige Max, Prestige Performance & Prestige Xcel | 15% | 15% | 7.5% | 7.5% | 3% | 3% | 3% | 3% | 3% | 3% |
| API Rider | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |
| V-Pro UL | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 |
| Virtus VUL | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 | 4.5 |

Any life insurance commissions payable will continued to be paid to the Broker Dealer of record (Servicing Broker Dealer) while the Selling Agreement remains in force and will be paid on a particular life insurance policy as long as the policy remains in force.



Ohio National
Financial Services.

January, 2013

confidential

confidential



## Ohio National
## Financial Services®

*Life changes. We'll be there.*

---

**ONCORE COMMISSION SCHEDULE**

---

**Please check which ONcore products firm can sell:**

- ☑ Premier
- ☑ Value
- ☑ Lite
- ☑ Xtra

On the following pages, please mark which Commission Options your Registered Representative can choose.

Section A: allows the firm to control which Commission Options your Registered Representatives may choose from. If Section A: is filled in; then in A2 the firm needs to pick a default option for cases where reps fail to make the choice on their application.

Also, if Section A is filled in, the reps will need to fill in the Rep Option on each client application (under their signature).

Section B: allows the firm to choose one Commission Option for all business. If this section is selected, reps will not need to fill in the Rep Option on the application.

**Please sign page 5 of the Oncore Commission Schedule and return it along with the Selling Agreement for proper Commission processing.**

Page 1 of 5    Effective May 1, 2014

confidential

confidential

## SCHEDULE OF COMMISSIONS - IBD

### COMMISSIONS FOR PURCHASERS AGE 80 and UNDER

|  | Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|---|
| Initial Premium | 6.00% | 5.00% | 1.00% | 7.00% | 3.00% |
| Add-on premiums | 6.00% | 5.00% | 1.00% | 7.00% | 3.00% |
| Trails | | | | | |
| Deposit Yrs 2-6 | 0.00% | 0.25% | 1.00% | 0.00% | 0.80% |
| Deposit Yrs 7 + | 1.00% | 1.00% | 1.00% | 0.00% | 0.80% |

### Commissions for purchasers age 81 - 88:

|  | Option 1 | Option 4 | Option 5 |
|---|---|---|---|
| Initial Premium | 3.00% | 3.50% | 1.50% |
| Add-on premiums | 3.00% | 3.50% | 1.50% |
| Trails | | | |
| Deposit Yrs 2-6 | 0.00% | 0.00% | 0.40% |
| Deposit Yrs 7 + | 1.00% | 0.00% | 0.40% |

**1: You must select either A¹ or B:**

**A: Firm allows Registered Representative to choose from the following options:**

| Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ | ✓ |

**1a: If A is selected, part 2 must be completed.**

**A2: If individual broker fails to select option, default will be:**

| Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|
| ✓ | | | | |

**B: Firm chooses one option for all business:**

| Option 1 | Option 2 | Option 3 | Option 4 | Option 5 |
|---|---|---|---|---|
| | | | | |

Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during the free look period.
A chargeback of 1% will apply to contracts surrendered in years one and two if option 4 is chosen.
There will be a 100% chargeback if death occurs within the first six months.
There will be a 50% chargeback if death occurs within the second six months.

2:Trails are calculated on the quarterly anniversary by multiplying the trail basis* by the quarterly trail rate.
For policies with multiple premiums, the trail basis is multiplied by the trail basis ratio**.
*The trail basis equals the average between the contract value on the quarterly anniversary and the contract value 90 days prior.
**The trail basis ratio is the portion of premium that is due a trail on the quarterly anniversary.

Trail commissions will continue to be paid to broker dealer of record while the Selling Agreement remains in force and
will be paid on a particular contract until the contract is surrendered or annuitized.

We reserve the right to adjust commissions on policies annuitized during the first contract year.

Page 2 of 5

confidential

14

confidential

## SCHEDULE OF COMMISSIONS - ISO

**COMMISSIONS FOR PURCHASERS AGE 80 and UNDER**

|  | Option 1 | Option 2 | Option 3 |
|---|---|---|---|
| Initial Premium [1] | 5.00% | 4.00% | 0.70% |
| Add-on premium | 5.00% | 4.00% | 0.70% |
| Trails [2] |  |  |  |
| Deposit Yrs 2-6 | 0.00% | 0.00% | 0.70% |
| Deposit Yrs 7 + | 0.00% | 0.50% | 0.70% |

**Commissions for purchasers age 81 - 85:**

|  | Option 1 | Option 2 | Option 3 |
|---|---|---|---|
| Initial Premium | 2.00% | 2.00% | 2.00% |
| Add-on premiums | 2.00% | 2.00% | 2.00% |
| Trails [2] |  |  |  |
| Deposit Yrs 2-6 | 0.00% | 0.00% | 0.00% |
| Deposit Yrs 7 + | 0.50% | 0.50% | 0.50% |

**1: You must select either A[1s] or B:**

A: Firm allows Registered Representative to choose from the following options:

| Option 1 | Option 2 | Option 3 |
|---|---|---|
| ✓ | ✓ | ✓ |

1s: If A is selected, part 2 must be completed.

A2: If individual broker fails to select option, default will be:

| Option 1 | Option 2 | Option 3 |
|---|---|---|
| ✓ |  |  |

B: Firm chooses one option for all business:

| Option 1 | Option 2 | Option 3 |
|---|---|---|
|  |  |  |

Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during the free look period.

There will be a 100% chargeback if death occurs within the first six months.
There will be a 50% chargeback if death occurs within the second six months.

2: Trails are calculated on the quarterly anniversary by multiplying the trail basis* by the quarterly trail rate.
For policies with multiple premiums, the trail basis is multiplied by the trail basis ratio**.
*The trail basis equals the average between the contract value on the quarterly anniversary and the contract value 90 days prior.
**The trail basis ratio is the portion of premium that is due a trail on the quarterly anniversary.

Trail commissions will continue to be paid to broker dealer of record while the Selling Agreement remains in force and will be paid on a particular contract until the contract is surrendered or annuitized.

We reserve the right to adjust commissions on policies annuitized during the first contract year.

Page 3 of 5

confidential

confidential

## SCHEDULE OF COMMISSIONS – IBD

| COMMISSIONS FOR PURCHASERS AGE 80 and UNDER | Option 1 | Option 2 |
|---|---|---|
| Initial Premium[1] | 6.00% | 4.00% |
| Add-on premiums | 6.00% | 4.00% |
| Trails[2] | | |
| Deposit Yrs 2-4 | 0.00% | 1.00% |
| Deposit Yrs 5+ | 1.00% | 1.00% |

| COMMISSIONS FOR PURCHASERS AGE 81 to 85 | Option 1 | Option 2 |
|---|---|---|
| Initial Premium | 3.00% | 2.00% |
| Add-on premiums | 3.00% | 2.00% |
| Trails[2] | | |
| Deposit Yrs 2-4 | 0.00% | 1.00% |
| Deposit Yrs 5+ | 1.00% | 1.00% |

1: You must select either A[1a] or B:

| A: Firm allows Registered Representative to choose from the following options: | |
|---|---|
| Option 1 | Option 2 |
| | ✓ |

1a: If A is selected, part 2 must be completed.

| A2: If individual broker fails to select option, default will be: | |
|---|---|
| Option 1 | Option 2 |
| ✓ | |

| B: Firm chooses one option for all business: | |
|---|---|
| Option 1 | Option 2 |
| | |

Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during the free look period.

There will be a 100% chargeback if death occurs within the first six months.
There will be a 50% chargeback if death occurs within the second six months.

2: Trails are calculated on the quarterly anniversary by multiplying the trail basis* by the quarterly trail rate.
For policies with multiple premiums, the trail basis is multiplied by the trail basis ratio**.
*The trail basis equals the average between the contract value on the quarterly anniversary and the contract value 90 days prior.
**The trail basis ratio is the portion of premium that is due a trail on the quarterly anniversary.

Trail commissions will continue to be paid to broker dealer of record while the Selling Agreement remains in force and
will be paid on a particular contract until the contract is surrendered or annuitized.

We reserve the right to adjust commissions on policies annuitized during the first contract year.

Page 4 of 5

confidential

confidential

## SCHEDULE OF COMMISSIONS - IBD

### COMMISSIONS FOR PURCHASERS AGE 80 and UNDER

| | Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|---|
| Initial Premium[1] | 5.00% | 4.00% | 4.00% | 3.00% |
| Add-on premiums | 5.00% | 4.00% | 4.00% | 3.00% |
| Trails[2] | | | | |
| Deposit Yrs 2 - 8 | 0.00% | 0.25% | 0.00% | 0.25% |
| Deposit Yrs 9 + | 0.00% | 0.25% | 1.00% | 1.00% |

**1: You must select either A[1*] or B:**

A: Firm allows Registered Representative to choose from the following options:

| Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|
| ✓ | ✓ | ✓ | ✓ |

**1a: If A is selected, part 2 must be completed.**

A2: If individual broker fails to select option, default will be:

| Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|
| ✓ | | | |

B: Firm chooses one option for all business:

| Option 1 | Option 2 | Option 3 | Option 4 |
|---|---|---|---|
| | | | |

Annuitant must be living at time of policy delivery.
There will be a 100% chargeback if the policy is not taken during the free look period.

There will be a 100% chargeback if death occurs within the first six months.
There will be a 50% chargeback if death occurs within the second six months.

Trails are calculated on the quarterly anniversary by multiplying the trail basis* by the quarterly trail rate.
For policies with multiple premiums, the trail basis is multiplied by the trail basis ratio**.
*The trail basis equals the average between the contract value on the quarterly anniversary and the contract value 90 days prior.
**The trail basis ratio is the portion of premium that is due a trail on the quarterly anniversary.

Trail commissions will continue to be paid to broker dealer of record while the Selling Agreement remains in force and will be paid on a particular contract until the contract is surrendered or annuitized.

We reserve the right to adjust commissions on policies annuitized during the first contract year.

OHIO NATIONAL LIFE INSURANCE COMPANY

By: _Thomas A. Barefield_
Name:     Thomas A. Barefield
Title: Vice Chairman & Chief Distribution Officer

OHIO NATIONAL EQUITIES, INC

By: _Thomas A. Barefield_
Name:     Thomas A. Barefield
Title: Vice Chairman & Chief Distribution Officer

Acknowledged and agreed to:
BROKER DEALER:
By: _Debra Shannon_
Name: _Debra Shannon_
Title: _CCO_
Date: _8-25-14_

Page 5 of 5

confidential

ONFS FAX Copy Page 19 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server)41    Fax Server

confidential


**Ohio National**
**. Financial Services.**

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation

P.O. Box 5308 Cincinnati, Ohio 45201-5308
Telephone: 1.888.698.3941

**ONcore Commission Addendum**

This Addendum, to update the chargeback terms in your ONcore Schedule of Commissions, shall supplement the Schedule of Commissions currently in effect under the Selling Agreement between your firm and The Ohio National Life Insurance Company, Ohio National Life Assurance Corporation and Ohio National Equities, Inc. This Addendum applies to all sales of ONcore variable annuities.

**Effective Immediately:**
There will be a 100% commission chargeback if the annuitant's death occurs within the first 6 months of the ONcore contract.
There will be a 50% commission chargeback if the annuitant's death occurs within the second 6 months of the ONcore contract.

confidential

## ADDENDUM TO SELLING AGREEMENT

The Selling Agreement by and between The Ohio National Life Insurance Company and Ohio National Life Assurance Corporation (collectively referred to as "ONL"), Ohio National Equities, Inc. ("ONEQ"), and your firm ("BD"), is amended as follows.

1.      Section 7 of the Selling Agreement is hereby amended by inserting the following at the end of the section:

"BD may use electronic order tickets with the consent of ONL. If BD submits electronic order tickets for Contracts, BD represents and warrants that the electronic order ticket for the purchase of a Contract operates as an electronic signature from the registered representative representing whether or not a replacement is involved in the sale. If a replacement is involved, BD agrees to forward all required replacement paperwork and notices to ONL."

2.      All other terms and conditions of the Selling Agreement remain in full force and effect.

confidential

confidential

## GROUP VARIABLE ANNUITY ADDENDUM

WHEREAS, the parties hereto have entered into a Selling Agreement in order to enable BD and its Representatives to sell ONL variable products, namely life insurance and annuity products; and

WHEREAS, the parties wish to authorize BD and its Representatives to sell ONL group annuity products, which may include SEC-registered group variable annuities and non-registered group variable annuities; and

WHEREAS, ONL desires to market the group variable annuities through BD's affiliated insurance agency ("Agency") and BD's representatives;

NOW, THEREFORE, the parties hereto agree to supplement the Agreement, with regard to sales of group variable annuities, as follows:

1.    Incorporation by Reference. The terms and provisions of the Selling Agreement are incorporated herein and made applicable to the solicitation, delivery, and servicing of group variable annuities. except as follows:

(a) References in the Selling Agreement to Contracts shall, for purposes of this Addendum, also be references to group variable annuity contracts issued by ONL.

(b) The compensation supplement attached to, and incorporated into, this Addendum, shall apply to the sales of group variable annuity contracts issued by ONL. The compensation payable to the Agency under said compensation supplement is subject to such future changes as are made applicable to the group variable annuity contracts and the compensation payable thereunder described therein.

2.    Purchase Payments. A payment made to BD or BD's receipt of a check or other negotiable instrument payable to ONL shall not constitute payment to, or receipt by, ONL. BD shall not make representations to contract holders or premium payers contrary to the foregoing.

3.    Application of ONL Rules and Practices. The then-current rules and practices of ONEQ and ONL shall govern the payment and adjustment of compensation under the following circumstances: (a) if issuance of the policy is based on any modification of ONL's rules, or (b) if no other applicable provision of this agreement controls.

4.    Modifications and Waivers. Neither BD nor its Representatives shall have the authority to modify or waive any provision of any group contract issued by ONEQ or to bind ONEQ or ONL with BDs representatives.

5.    Delivery. BD and its Representatives shall promptly deliver group variable annuity contracts to purchasers within the delivery period established by the issuer and consistent with ONL's policies and procedures.

confidential

confidential

THE OHIO NATIONAL LIFE INSURANCE COMPANY

By: _Thomas Q. Barefield_

Title: _Vice Chairman + Chief Distribution Officer_

Date: _8/25/14_

OHIO NATIONAL EQUITIES, INC.

By: _Thomas Q. Barefield_

Title: _Vice Chairman + Chief Distribution officer_

Date: _8/25/14_

BROKER DEALER (Identified in Agreement)
(On behalf of itself and Agency)

_Veritas Independent Partners_
Broker Dealer Firm

_850 Bob Courtway Dr. Suite50_
Address

_Conway, Ar 72032_
City, ST, ZIP

By: _Debra Shannon_
Signature

_Debra Shannon_
Print name

Title: _CCO_

Date: _8-25-14_

*Group variable annuity products are issued by The Ohio National Life Insurance Company. Product, product features and rider availability vary by state. Issuers are not licensed to conduct business and products not distributed in AK, HI and NY.*

FOR FINANCIAL PROFESSIONAL USE ONLY. NOT FOR USE WITH THE GENERAL PUBLIC.

confidential

confidential

**Commission Schedules**
**Effective June 17, 2013**

| | | |
|---|---|---|
| 5 | 0.00% | 0.00% |
| 6 | 1.00% | 0.20% |
| 7 | 2.00% [4] | 0.40% |
| 8 | 0.50% | 0.10% |
| A | 0.00% | 0.00% |
| F | 0.10% | 0.10% |
| G | 0.20% | 0.20% |
| H | 0.30% | 0.30% |
| J | 0.40% | 0.40% |
| K | 0.50% | 0.50% |
| L | 0.60% | 0.60% |
| M | 0.70% | 0.70% |
| N | 0.90% | 0.90% |

[1] There is a 100% chargeback of deposit commissions if the Contract is terminated during the first 24 months following the Contract Date. We reserve the right to charge back deposit commissions for excess deposit contributions. We reserve the right to process a prorated chargeback of deposit commissions in the first two Contract years for yearly cash outflows in excess of 10% of commissionable deposit contributions to date.

[2] Total Contract Charges (exclusive of any non-commission-based charges) are based upon the sum of both the deposit and trail commission options selected.

[3] Trail commissions are paid quarterly and are calculated on the average monthly contract balance during the quarter as long as the Contract remains in effect and a duly appointed Representative of BD is servicing the contract to Ohio National's satisfaction.

[4] The 2% deposit commission is available only for deposit contributions of $2 million or less.

- No deposit commissions will be paid once notice of plan termination has been received by Ohio National.

4400-ADD 6/13

confidential

confidential

## DISABILITY INCOME INSURANCE ADDENDUM

WHEREAS, the parties hereto have entered into a Selling Agreement in order to enable BD and its Representatives to sell ONL variable products; and

WHEREAS, the parties wish to authorize BD and its Representatives to sell ONL disability income insurance products ("DI products"), which are not variable contracts and not subject to regulation as securities under federal or state law; and

WHEREAS, ONL desires to market the DI products through BD's affiliated insurance agency ("Agency") and BD's Representatives;

NOW, THEREFORE, the parties hereto agree to supplement the Selling Agreement, with regard to sales of disability income insurance products, as follows:

1.    Incorporation by Reference.  The terms and provisions of the Selling Agreement are incorporated herein and made applicable to the solicitation, delivery and servicing of DI products, except as follows:

(a) ONL, including both The Ohio National Life Insurance Company and Ohio National Life Assurance Corporation, is the issuer of the DI products.

(b) References in the Selling Agreement to Contracts shall, for purposes of this addendum, also be references to disability income insurance policies issued by ONL.

(c) The compensation supplement attached to, and incorporated into, this addendum, shall apply to the sales of disability income insurance policies issued by ONL. The compensation payable to the Agency under said compensation supplement is subject to such future changes as are made applicable to the disability income insurance policies described therein.

2.    Underwriting.  BD shall cause its Representatives to comply with all procedures established by ONL for soliciting, completing and transmitting applications and orders and shall comply with ONL's rules and practices in regards to insurance underwriting and acceptance of risks.

3.    Purchase Payments.  A payment made to BD, or BD's receipt of a check or other negotiable instrument payable to ONL, shall not constitute payment to, or receipt by, ONL, except for BD's receipt of the initial payment necessary to place in force a policy or to effect its delivery.  BD shall not make any representations to policy owners or premium payors contrary to the foregoing.

4.    Limits on Authority.  BD and its Representatives have no authority to accept any past due payment on behalf of ONL; to approve evidence of insurability for ONL; or to bind ONL by making or receiving any promises, representations or notices contrary to or inconsistent with the terms and provisions of the disability income insurance policies or any sales literature developed or approved by ONL.

5.    Delivery of Policies.  No disability income insurance policy shall be delivered unless and until the minimum premium payment required to place the policy in effect has been paid by the purchaser, nor unless BD, through its Representatives, is reasonably satisfied, based upon its own knowledge and upon reasonable inquiry to the proposed insured, that the proposed insured is, at the time of policy delivery, in the same health and insurable condition as represented in the application for the policy.

6.    Application of ONL Rules and Practices.  The then-current rules and practices of ONL shall govern the payment and adjustment of compensation under the following circumstances:

(a) if issuance of the policy is based on any modification of the insurer's rules;

(b) if the policy issued causes the total insurance for the insured to exceed the insurer's retention limit;

(c) if any premium or cost of insurance is waived on account of disability;

confidential

23

confidential

(d) if any temporary, extra premium or any extra premium on account of travel, residence or aviation is paid; or

(e) if no other applicable provision of this Agreement controls.

7.    Entire Agreement. Except as set forth in this Addendum, the Selling Agreement is unaffected and shall continue in full force and effect in accordance with its terms. If there is a conflict between this Addendum and the Selling Agreement, the terms of this Addendum will control.

**THE OHIO NATIONAL LIFE INSURANCE COMPANY**
**OHIO NATIONAL LIFE ASSURANCE CORPORATION**

By: _Thomas Q. Barefield_

Title: _Vice Chairman + Chief Distribution Officer_

Date: _8/25/14_

**OHIO NATIONAL EQUITIES, INC.**

By: _Thomas Q. Barefield_

Title: _Vice Chairman + Chief Distribution Officer_

Date: _8/25/14_

**BROKER DEALER** (identified in Agreement)
(on behalf of itself and Agency)

Firm: _Veritas Indepent Partners_

By: _Dolin Shannon_

Title: _CCO_

Date: _8-25-14_

confidential

confidential

## Disability Income Commission Schedule
## Ohio National Financial Services

**First –Year Commission** (as a percentage of first year premiums paid on policies produced by Dealer's Representatives) [1]

| ContinuON Income Solutions | Comp Rate |
|---|---|
| **Product Name**<br>• Non – Cancellable Policy<br>• Business Overhead Expense<br>• Disability Buy – Sell Policy | |
| Year 1 | 75% |
| Year 2 Thru 10 | 10% |
| Year 11 + | 3% |

- Commission rates shown are payable to Maximum Commissionable Premium (MCP). Amounts in excess of MCP are paid at Renewal Commission rates (shown below).

- Commission on Disability Income is paid as earned. In the event of any commission charge back, It will be charged back to the broker dealer.

- In the event of any policy cancellation, including death, for any model premium paid other than monthly, the commissions will be charged back to the broker dealer

- based on the pro-rated refunded premium.

**Renewal Commissions** (as a percentage of premiums paid in the second and later policy years)

| POLICY PLANS | POLICY YEARS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11+ |
| Non – Cancellable Policy | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 3% |
| Business Overhead Expense | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 3% |
| Disability Buy – Sell Policy | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 10% | 3% |

Any Disability Insurance Commissions payable will continue to be paid to the Broker Dealer of record (Servicing Broker Dealer) while the Selling Agreement remains in force and will be paid on a particular Disability Income Insurance policy as long as the policy remains in force.



Ohio National
Financial Services.

January, 2014

confidential

confidential

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation


**Ohio National**
**Financial Services.**

One Financial Way
Cincinnati, Ohio 45242
Telephone: 513.794.6100
Fax: 513.794.6425

### ON Net Access Staff Authorization

Please authorize and establish the means for the employees of **Veritas Ind. Partners** a Broker-Dealer, identified on the attached Schedules, to have access to ON-Net, Ohio National's Web site for sales associates. Supervisory employees of the Broker-Dealer (Schedule A), Non-Supervisory employees of the Broker-Dealer (Schedule B), and Commission Processing employees of a Broker-Dealer back office (Schedule C) may be granted ON-Net account access through this form.

(1)  Employees of the Broker-Dealer identified on Schedule A hold responsibility for the supervision of the Broker-Dealer's operations and/or supervision of the activities of insurance producers and registered representative employed by or under contract with the Broker-Dealer. These employees may be Principals who hold supervisory duties with respect to the sale of securities. These employees may have access to all information available through ON-Net including reports and information about the customers of the Broker-Dealer who hold life insurance policies or annuity contracts issued by Ohio National.

(2)  Employees of the Broker-Dealer identified on Schedule B, who do not hold supervisory responsibilities, will have access to all information available through ON-Net except for reports and/or any information or capabilities that provide access to personal health or personal financial information about customers of Ohio National.

(3)  Employees of the Broker Dealer identified on Schedule C, who hold the responsibility for processing commission payments related to Ohio National business, will have access to information or capabilities that provide the necessary financial information needed to facilitate processing commission payments to representatives.

**Mutual Understandings for Delegating Access to ON-Net**

I understand that the designated employees will have access to ON-Net with certain capabilities while visiting the Web site and that the level of access depends on the responsibilities of the employees as assigned by the Broker-Dealer. The Broker-Dealer accepts responsibility for supervising the use of ON-Net by these employees in accordance with the delegations hereby requested. Further, the Broker-Dealer accepts responsibility to give Ohio National prompt notice when the ON-Net access capability delegated to any of these employees should be terminated for any reason. The account access hereby delegated to each employee will remain active until the Broker-Dealer notifies Ohio National that an account should be terminated.

No employee of the Broker-Dealer granted access to ON-Net through this delegation is a Registered Representative of the Broker-Dealer. Registered Representatives appointed by Ohio National will have their own access rights to ON-Net.

Each employee of the Broker-Dealer granted access to ON-Net through this delegation has read and accepted the terms of the ON-Net Terms and Conditions of Use and the Broker-Dealer has maintained a copy of that acceptance.

Delegation of ON-Net access hereby granted remains subject to the terms and conditions of the selling agreement established by and between Ohio National, and its subsidiaries, and the Broker-Dealer.

On behalf of **Veritas Independent Partners** hereby acknowledge and accept the terms and conditions of the delegation of ON-Net access to the employees identified herein.

| | |
|---|---|
| _Debra Shannon_ | Date  _8-21-14_ |
| Signature | |
| _Debra Shannon_ | Title  _C.C.O_ |
| Printed Name | |

Form 1204 Rev. 4/09

Page 1 of 4

confidential

26

confidential

## SCHEDULE A
### ON-Net Access -- Staff Authorization
### Supervisory Level Accounts
### For

_Veritas Independent Partners_ , a Broker-Dealer

|   | Name | Title | E-mail address |
|---|------|-------|----------------|
| **A** | Debra Shannon | CCC | debra@veritasmail.com |
| **B** | Gail Murdock | Owner-principal | gail@veritasmail.com |
| **C** | | | |
| **D** | | | |
| **E** | | | |
| **F** | | | |
| **G** | | | |
| **H** | | | |
| **I** | | | |
| **J** | | | |
| **K** | | | |
| **L** | | | |
| **M** | | | |
| **N** | | | |
| **O** | | | |
| **P** | | | |
| **Q** | | | |
| **R** | | | |
| **S** | | | |
| **T** | | | |
| **U** | | | |
| **V** | | | |
| **W** | | | |
| **X** | | | |
| **Y** | | | |
| **Z** | | | |

One account per line with a maximum of 26 between Supervisory and Non-Supervisory Accounts

Form 1204 Rev. 4/09

Page 2 of 4

confidential

confidential

**SCHEDULE B**
**ON-Net Access -- Staff Authorization**
**Non-Supervisory Level Accounts**

Veritas Independent Partners                    , a Broker-Dealer

For

|   | Name | Title | E-mail address |
|---|------|-------|----------------|
| **A** | Debra Shannon | CCO | debra everitasmail.com |
| **B** | Gail Murdoch | Owner, Principal | gail@veritasmail.com |
| **C** | | | |
| **D** | | | |
| **E** | | | |
| **F** | | | |
| **G** | | | |
| **H** | | | |
| **I** | | | |
| **J** | | | |
| **K** | | | |
| **L** | | | |
| **M** | | | |
| **N** | | | |
| **O** | | | |
| **P** | | | |
| **Q** | | | |
| **R** | | | |
| **S** | | | |
| **T** | | | |
| **U** | | | |
| **V** | | | |
| **W** | | | |
| **X** | | | |
| **Y** | | | |
| **Z** | | | |

One account per line with a maximum of 26 between Supervisory and Non-Supervisory Accounts

Form 1204 Rev. 4/09                                        Page 3 of 4

confidential

confidential

## SCHEDULE C
### ON-Net Access
### Back Office Level Accounts

Name Veritas Independent Partners_____, a Broker-Dealer

|   | Name | Title | E-mail address | Phone Number |
|---|------|-------|----------------|--------------|
| A | Debra Shannon | CCO | debra@veritasmail.com | 501-358-681 |
| B | Gail Murdoch | Owner/principal | gail@veritasmail.com | 501-358-681 |
| C |   |   |   |   |
| D |   |   |   |   |
| E |   |   |   |   |
| F |   |   |   |   |
| G |   |   |   |   |
| H |   |   |   |   |
| I |   |   |   |   |
| J |   |   |   |   |
| K |   |   |   |   |
| L |   |   |   |   |
| M |   |   |   |   |
| N |   |   |   |   |
| O |   |   |   |   |
| P |   |   |   |   |
| Q |   |   |   |   |
| R |   |   |   |   |
| S |   |   |   |   |
| T |   |   |   |   |
| U |   |   |   |   |
| V |   |   |   |   |
| W |   |   |   |   |
| X |   |   |   |   |
| Y |   |   |   |   |
| Z |   |   |   |   |

Keep one account per line with a maximum of 26.

Please return the completed form to:
Ohio National Financial Services
Attn: Institutional Sales - Dept. #42
One Financial Way
Cincinnati, OH 45242

Form 1204 Rev. 4/09

confidential

29

confidential


**Ohio National**
**Financial Services.**

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation

Post Office Box 237
Cincinnati, Ohio 45201-0237
Telephone: 513.794.6100

Direct Deposit Authorization Agreement

# Complete the direct deposit authorization agreement and forward to Institutional Sales Compensation – Dept. 71B

I hereby authorize The Ohio National Life Insurance Company ("Company") to initiate credit entries to our firm's account indicated below for recurring payroll transactions. This authority is to remain in full force and effect until the Company has received written notification from us of its termination in such time and in such manner as to allow the Company reasonable time to act upon it. I understand the Company makes no representation as to the tax consequences resulting from directing compensation to the referenced account.

**1. Firm Information**

_Veritas Independent Partners_
Firm Name

_1150 Bob Courtway Dr. Suite 50_
Address

_501- 358- 6131_
Phone Number

_Delia Shannon_
Authorized Firm Representative (required)

_____
Additional Authorized Firm Representative (optional)

**2. Bank Information** (checking account only)

_Centennial Bank_
Bank Name

_620 Chestnut St, Conway Ar 72032_
Bank Address

_501 - 328 - 4663_
Bank Phone Number

[REDACTED]
Bank Routing Number

[REDACTED]
Bank Account Number

Signature & Title
of Authorized Firm
Representative (required)    _Delia Shannon_      Date _8-25-14_

**NOTE: A pre-note will be sent to the designated bank for account verification purposes. Please allow up to 10 days for verification process to complete.**

Form 1515-IS 4/09                                                                 Page 1 of 1

confidential

confidential

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation

One Financial Way
Cincinnati, Ohio 45242
Telephone: 513.794.6100
Fax: 513.794.4502



**Ohio National
Financial Services.**

ON-Net Access - Back Office Authorization

Please authorize and establish the means for certain back office employees of _Veritas Ind. Partners_, a Broker-Dealer, as identified on the attached Schedule, to have ON-Net account access upon Broker-Dealer's execution of this form.

Employees of the Broker Dealer identified on the attached Schedule, who hold the responsibility for processing commission payments related to Ohio National business, will have access to information or capabilities that provide the necessary financial information needed to facilitate processing commission payments to representatives.

**Mutual Understandings for Delegating Access to ON-Net**

I understand that the designated employees will have access to ON-Net with certain capabilities while visiting the Web site and that the level of access will depend on the responsibilities of the employees as assigned by the Broker-Dealer. The Broker-Dealer accepts responsibility for supervising the use of ON-Net by these employees in accordance with the internet delegations hereby requested and in accordance with the terms of the selling agreement in effect. Further, the Broker-Dealer agrees to give Ohio National prompt notice when the ON-Net access capability delegated to any of these employees is terminated for any reason or in the event of a security incident that could result in harm or inconvenience to customer. The account access hereby delegated to each employee will remain active until the Broker-Dealer notifies Ohio National that an account should be terminated.

No employee of the Broker-Dealer granted access to ON-Net through this delegation is a Registered Representative of the Broker-Dealer. Registered Representatives appointed by Ohio National will have their own access rights to ON-Net.

Each employee of the Broker-Dealer granted access to ON-Net through this delegation has read and accepted the terms of the ON-Net Terms and Conditions of Use and the Broker-Dealer has maintained a copy of that acceptance.

Delegation of ON-Net access hereby granted remains subject to the terms and conditions of the selling agreement established by and between Ohio National, and its subsidiaries, and the Broker-Dealer.

On behalf of _Veritas Ind. Partners_ I hereby acknowledge and accept the terms and conditions of the delegation of ON-Net access to the employees identified herein.

| Signature | Date |
|---|---|
| _Debra Shannon_ | _8-21-14_ |
| Printed Name | Title _C.C.O_ |

Form 1204-C 2/11                                                                 Page 1 of 2

confidential

confidential

**Broker-Dealer Commissions Department**
**ON-Net Access**
**Back Office Level Accounts**

Name  Veritas Independent Partners , a Broker-Dealer

|   | Name | Title | E-mail address | Phone Number |
|---|------|-------|----------------|--------------|
| A | Debra Shannon | CCO | debra@veritasmail.com | 561-358-316 |
| B | Gail Murdoch | Managing Member | gail@veritasmail.com | 561-357-316 |
| C |  | owner- Principal |  |  |
| D |  |  |  |  |
| E |  |  |  |  |
| F |  |  |  |  |
| G |  |  |  |  |
| H |  |  |  |  |
| I |  |  |  |  |
| J |  |  |  |  |
| K |  |  |  |  |
| L |  |  |  |  |
| M |  |  |  |  |
| N |  |  |  |  |
| O |  |  |  |  |
| P |  |  |  |  |
| Q |  |  |  |  |
| R |  |  |  |  |
| S |  |  |  |  |
| T |  |  |  |  |
| U |  |  |  |  |
| V |  |  |  |  |
| W |  |  |  |  |
| X |  |  |  |  |
| Y |  |  |  |  |
| Z |  |  |  |  |

Keep one account per line with a maximum of 26.

Please return the completed form to:
Ohio National Financial Services
Attn: Institutional Sales - Dept. #42
One Financial Way
Cincinnati, OH 45242

Form 1204-C 2/11                                                      Page 2 of 2

confidential

confidential



## Ohio National
### Financial Services.

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation

Post Office Box 237
Cincinnati, Ohio 45201-0237
Telephone: 513.794.6100
Fax #: 513.794.4502

### Representative Data Sheet

Broker-Dealer Name: *Veritas Independent Partners*

Wholesaler/Regional Vice President Name: *Shawn Martin*

Branch Address: *1150 Bob Courtway Dr Suite 50*
*Conway, Ar 72032*

Phone: (*501*) *358-6131*                     Fax: (*501*) *730-0404*

Agent Name: *R.*            *Gail*            *Murdoch*
       First         Middle        Last

Social Security Number: [REDACTED]            Date of Birth: [REDACTED]

Home Address: [REDACTED]
      (Street Address)
[REDACTED]
      (City, State and Zip)

Phone: [REDACTED]                     Fax: *501* ) *730-0404*

E-mail Address, if any: *gail@veritasmail.com*

State Where Application was Signed:

Ohio National will appoint you in the state where the application was taken. We need:
(1) copies of all applicable insurance licenses (if Initial licensing must be processed, there will be a significant time delay);
(2) CRD status report to obtain variable appointment.

Certain states require additional information to be collected and/or additional forms to be signed and filed. We will contact you if you request appointment in any of those states to review the requirements with you.

2

ONFS FAX Copy Page 35 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server)41  Fax Server

confidential

8/25/2014          Web CRD - Registrations Summary With Current Empl... (User Name: dehannon10, OrgID: 169291)

# Registrations with Current Employers

**Individual CRD#: 3171059**          **Individual Name: MURDOCH, REBECCA G**

**Firm CRD # : 169291**          **Firm Name : VERITAS INDEPENDENT PARTNERS, LLC**

| Employment Start Date | 08/04/2014 |
|---|---|

| Regulatory Authority | Registration Category | Filing Date | Status Date | Registration Status | Approval Date |
|---|---|---|---|---|---|
| FINRA | GP | 08/04/2014 | 08/20/2014 | APPROVED | 08/20/2014 |
| FINRA | GS | 08/04/2014 | 08/20/2014 | APPROVED | 08/20/2014 |
| AR | AG | 08/04/2014 | 08/22/2014 | APPROVED | 08/22/2014 |
| AR | RA | 08/04/2014 | 08/05/2014 | APPROVED | 08/05/2014 |

confidential



**Ohio National**
**Financial Services.**
*Life changes. We'll be there.*

## OHIO NATIONAL FINANCIAL SERVICES
## BROKER-DEALER INFORMATION REQUEST SHEET

**Firm Information:**

Legal Name of Firm: *Veritas Independent Partners, LLC*

Home Office Address: *1150 Bob Courtway Dr, Suite 50*

*Conway, Ar 72032*

Firm Taxpayer ID#: [REDACTED]    Firm CRD#: *16291*

Telephone #: *501-358-8161*    Fax #: *501-730-0404*

Note: Any request to set up a new Selling Agreement must include copies of all corporate licenses in any state where an active representative of the broker dealer may solicit business and a copy of the CRD status report for the broker dealer.

If you use the insurance licenses of corporate affiliates, the following information is required, along with a letter of affiliation explaining the business relationship between the broker-dealer and the corporate affiliates:

**Holder of Insurance Licenses:**

Legal Name of Corporate Affiliate(s): *Veritas Independent Partner*

Business Address: *1150 Bob Courtway Dr, Suite 50, Conway Ar 72032*

Telephone: *501-358-6131*    Fax: *501-730-0404*

Taxpayer ID # of Affiliate(s): [REDACTED]

States in which each affiliate is licensed: *AR*

3

confidential

confidential

## OHIO NATIONAL FINANCIAL SERVICES
### BROKER-DEALER INFORMATION REQUEST SHEET

Firm Administrative and Operating Contacts:

**Due Diligence & Compliance:**

Name: Debra Shannon    Title: C CO

E-mail: debra@veritasmail.com    Phone: 501-358-6131

Fax: 501-730-0404

**Marketing:**

Name: Gail Murdoch    Title: Principal

E-mail: gail@veritasmail.com    Phone: 501-358-6131

Fax: 501-730-0404

**Annuities:**

Name: Debra Shannon    Title: CCO

E-mail: debra@veritasmail.com    Phone: 501-358-6131

Fax: 501-730-0404

**Licensing:**

Name: Debra Shannon    Title: CCO

E-mail: debra@veritasmail.com    Phone: 501-358-6131

Fax: 501-730-0404

**Commissions:**

Name: Debra Shannon    Title: CCO

E-mail: debra@veritasmail.com    Phone: 501-358-6131

Fax: 501-730-0404

4

confidential

confidential

| BUSINESS PROCESSING BY STATE | | |
|---|---|---|
| | | |
| ALABAMA | YES | |
| ALASKA | N/A | Ohio National is not appointed as a company to do business in this state |
| ARIZONA | NO APPOINTMENT STATE | |
| ARKANSAS | YES | |
| CALIFORNIA | YES | |
| COLORADO | NO APPOINTMENT STATE | |
| CONNECTICUT | YES | |
| DELAWARE | YES | |
| DIST OF COLUMBIA | YES | |
| FLORIDA | YES | |
| GEORGIA | NO | Appoinment is effective when the appoinment request is forwarded to the state |
| HAWAII | N/A | Ohio National is not appointed as a company to do business in theis state |
| IDAHO | YES | |
| ILLINOIS | NO APPOINTMENT STATE | |
| INDIANA | NO APPOINTMENT STATE | |
| IOWA | YES | |
| KANSAS | YES | |
| KENTUCKY | YES | Rep must show proof of Errors & Ommissions coverage to be appointed in this state |
| LOUISIANA | YES | |
| MAINE | YES | |
| MARYLAND | YES | |
| MASSACHUSETTS | YES | |
| MICHIGAN | YES | |
| MINNESOTA | YES | |
| MISSISSIPPI | YES | |
| MISSOURI | NO APPOINTMENT STATE | |
| MONTANA | YES | |
| NEBRASKA | YES | |
| NEVADA | YES | |
| NEW HAMPSHIRE | YES | |
| NEW JERSEY | YES | |
| NEW MEXICO | YES | |
| NEW YORK | YES | |

5

ONFS FAX Copy Page 39 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server) 41   Fax Server

confidential

| | | |
|---|---|---|
| NORTH CAROLINA | YES | |
| NORTH DAKOTA | YES | |
| OHIO | YES | |
| OKLAHOMA | YES | |
| OREGON | NO APPOINTMENT STATE | |
| PENNSYLVANIA | YES | |
| RHODE ISLAND | NO APPOINTMENT STATE | |
| SOUTH CAROLINA | YES | |
| SOUTH DAKOTA | YES | |
| TENNESSEE | YES | |
| TEXAS | YES | |
| UTAH | NO APPOINTMENT STATE | |
| VIRGINIA | YES | |
| VERMONT | YES | |
| WASHINGTON | YES | |
| WISCONSIN | YES | |
| WEST VIRGINIA | YES | |
| WYOMING | YES | |

6

confidential

## 2014 USA PATRIOT ACT COMPLIANCE CERTIFICATION

The undersigned Broker-Dealer, *Veritas Independent Partners*
(name of broker-dealer firm)

hereby certifies to Ohio National Financial Services, Inc. and any and all subsidiaries, and, if applicable, to National Security Life and Annuity Company, that it is in full compliance with the rules and regulations as established by the USA PATRIOT Act as follows:

1. Broker-Dealer has appointed an Anti-Money Laundering Officer;
2. Broker-Dealer has created and implemented policies, procedures and controls designed to reasonably prevent money laundering or the financing of terrorist activities;
3. Broker-Dealer provides ongoing Anti-Money Laundering training of personnel/registered representatives;
4. Broker-Dealer provides for independent review and testing of the Anti-Money Laundering Program;
5. Broker-Dealer files all applicable currency transaction or suspicious activity reports required under the Bank Secrecy Act, USA PATRIOT Act or FINRA rules;
6. Broker-Dealer obtains all necessary documentation and information from all customers as required under Section 326 of the USA PATRIOT Act;
7. Broker-Dealer verifies each customer's identity to ensure reasonable certainty of each customer's identity;
8. Broker-Dealer maintains all appropriate records required to be retained under the USA PATRIOT Act and applicable FINRA rules; and
9. Broker-Dealer allows Anti-Money Laundering books and records to be examined by the appropriate regulatory authorities.

Additionally, Broker-Dealer certifies that it complies with the sanctions programs administered by the Office of Foreign Assets Control ("OFAC"), and certifies that, through its clearing brokers, it maintains an OFAC compliance program which includes procedures for checking applicant names and persons with signature authority over contracts against the OFAC lists of sanctioned governments and specially-designed nationals, terrorists, and narcotics traffickers, and for screening wire transfers and other payments against the OFAC lists. Broker-Dealer agrees to alert Ohio National Financial Services, Inc., and if applicable, National Security Life and Annuity Company, in writing of any significant changes it might make to its Anti-Money Laundering Program.

Broker-Dealer is a U.S. Securities broker-dealer, registered with and subject to regulation by, the U.S. Securities and Exchange Commission and FINRA, in addition to various other regulatory organizations.

Certified this _25_ day of _August_, 20_14_ by an authorized officer of the Broker-Dealer.

Broker-Dealer: _Veritas Ind. Partners_                Tax ID: ____[REDACTED]____

_Debra Shannon_

Address: _1150 Bob Courtway Dr, Suite 50_          Print Name: _Debra Shannon_

City: _Conway_                                      Signature: _Debra Shannon_

State: _Ar_          Zip: _72032_                   Title: _CCO_

Phone Number: _501-358-6131_                        E-Mail: _debra@veritasmail.com_

confidential

ONFS FAX Copy Page 41 of 41 - Date: 8/26/2014 11:16:47 AM [Eastern Daylight Time] - FAX4 - To: 5542 - From: Fax Server)41  **Fax Server**

confidential

## 2014 ANNUITY SUITABILITY CERTIFICATION

The undersigned Broker-Dealer, *Veritas Independent Partners*

(name of broker-dealer firm)

hereby certifies to Ohio National Financial Services, Inc. and any and all subsidiaries, and, if applicable, to National

Security Life and Annuity Company (collectively "Insurer"), that the Selling Firm:

(1) is a registered broker-dealer and a member of FINRA;

(2) supervises sales of the Insurer's annuity contracts by the Selling Firm's registered representatives; and

(3) has established and currently maintains a system to supervise recommendations to customers by or through the Selling Firm or its affiliates regarding the purchase or exchange of fixed and variable annuity products, as applicable, issued by the Insurer, which system is reasonably designed to achieve compliance with:

(a) all state insurance laws or regulations based on the NAIC Suitability and Annuity Transaction Model Regulation, the Regulation as revised, or otherwise pertaining to annuity sales practices if and to the extent that such laws and regulations are applicable to the Selling Firm; and

(b) all FINRA conduct rules regarding suitability, including but not limited to, Rule 2320 and Rule 2330 if and to the extent that such rules are applicable to the Selling Firm; and

(4) has adopted and implemented written policies and procedures reasonably designed to achieve compliance with applicable laws, rules and regulations referenced above; and

(5) conducts periodic reviews of its records to confirm that the Selling Firm is in compliance with applicable laws, rules and regulations referenced above.

The Selling Firm acknowledges and agrees that the Insurer may review the Selling Firm's compliance with this Certification.

The undersigned represents that he/she (1) is a senior manager of the Selling Firm who, in conjunction with others, has responsibility for overseeing suitability of annuity sales, (2) has a reasonable basis on which to make this certification, and (3) is authorized to provide this certification on behalf of the Selling Firm.

Certified this 25 day of *August*, 20 14 by an authorized officer of the Broker-Dealer.

Broker Dealer: *Veritas Independent Partners*    ID: **[REDACTED]**

Address: *150 Bob Courtway Dr, Suite 56*    Print Name: *Debra Shannon*

City: *Conway*    Signature: *Debra Shannon*

State: *Ar*    Zip: *72032*    Title: *C.C.O*

Phone Number: *501-358-6131*    E-Mail: *debra@veritasmail.com*

confidential

40

One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
513.794.6100
ohionational.com

 Ohio National
Financial Services®

September 21, 2018

Veritas Independant Partners Llc
Ste 50
1150 Bob Courtway Dr
Conway, AR  72032-4773

RE:     Selling Agreement

To Whom It May Concern:

This letter is to provide notice of termination of any and all selling agreements, as amended, by and between you and any of your affiliates and The Ohio National Life Insurance Company, Ohio National Life Assurance Corporation and Ohio National Equities, Inc.  Termination will be effective December 12, 2018.   Pursuant to the agreement, all individual annuity trail compensation will cease at that time.  All group variable annuity trail compensation and life insurance renewal commissions will continue to be paid per the terms of the selling agreement.

You will be receiving information shortly about the terms for servicing your clients after termination of the selling agreement(s).

If you have any questions, please direct them to legal@ohionational.com.

Sincerely,

William C. Price
Senior Vice President & Assistant General Counsel

Exhibit

A-2



One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
513.794.6100
ohionational.com

September 21, 2018

Veritas Independant Partners Llc
Ste 50
1150 Bob Courtway Dr
Conway, AR 72032-4773

**RE:     Ongoing Servicing**

To Whom It May Concern:

This letter pertains to the variable insurance policies and variable annuity contracts issued by The Ohio National Life Insurance Company and its subsidiary, Ohio National Life Insurance Assurance Corporation (collectively, "ONL"), for which your firm is designated as broker-of-record and your registered representatives (your "Representatives") are designated as representatives-of-record (the "Variable Contracts") and to the fixed insurance policies and annuity contracts, including fixed indexed annuities, issued by ONL for which your Representatives are designated as the agent of record (collectively with the Variable Contracts, the "Contracts").

As you know, we recently notified you of a termination of your firm's selling agreement with ONL and Ohio National Equities, Inc. for the distribution of the Contracts, effective December 12, 2018. However, ONL will continue to maintain the designations of your firm and your Representatives as broker-of-record and representative-of-record, respectively, on its records and is willing to continue to provide you with access to ON-Net (or other ONL advisor portal) and provide you customer information through ON-Net, customer service, written correspondence and, where available, through the DTCC (collectively the "Customer Information Services") to continue to service the Contracts, in the case of each Contract until the Contract is canceled or your firm is no longer designated as broker-of-record for the Contract, subject to the following paragraph.

So long as your firm and your Representatives continue to access information related to the Contracts through the Customer Information Services, your firm shall, and shall cause your Representatives to, comply with all applicable laws and regulations related to the servicing of the Contracts. Your firm shall, and shall cause your Representatives to, comply with ONL's policies and procedures regarding the security and privacy of information related to the Contracts made available to you or your Representative through the Customer Information Services, including compliance with all applicable cybersecurity laws and regulations. In addition, your firm shall hold harmless and indemnify ONL for any loss or expense suffered as a result of any violation of, or noncompliance with, any applicable law or regulation, related to the servicing of the Contracts or to any information accessed or information or orders entered via the Customer Information Services or any fraudulent use of the Customer Information Services.

*(Over)*

**Exhibit**

**A-3**

exhibitsticker.com

Your firm shall be deemed to have consented to the terms and conditions of this letter if your firm or your Representatives continue to access information related to the Contracts through the Customer Information Services.  If your firm is unwilling to comply with the terms and conditions of this letter, please notify us so that we can restrict access to the Customer Information Services.

If you have any questions about any of the information in this letter, feel free to contact us at legal@ohionational.com.

Sincerely,

William C. Price
Senior Vice President & Assistant General Counsel